UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MELISSA VARGA,

        Plaintiff,

v.                                                                     Case No. 12-C-1102

CAROLYN COLVIN,

        Defendant.

## DECISION AND ORDER

Plaintiff Melissa Varga seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her applications for Disability Insurance Benefits under Title II and Supplementary Security Income (SSI) under Title XVI of the Social Security Act. 42 U.S.C. § 405(g). In a previous case, this Court reversed and remanded the Commissioner's decision denying her benefits. After a hearing before a different administrative law judge (ALJ), Varga's application was again denied on the grounds that she could perform her past work, as well as other jobs that exist in the regional economy. She now seeks review of that decision. For the reasons given below, the decision of the Commissioner will be affirmed.

### I. BACKGROUND

Varga's employment and medical history is set forth at some length in this court's previous decision. (No. 10-C-454, ECF No. 16.) In summary, Varga experienced a number of medical

conditions and impairments, including obesity, irritable bowel syndrome, migraines, chronic pain, PTSD, endometriosis, anxiety disorder and depression, all of which she alleged were disabling.

## II. ANALYSIS

A district court's review of a social security appeal is limited to determining whether the ALJ's decision is supported by substantial evidence and based on the proper legal criteria. *Scheck v. Barnhart,* 357 F.3d 697, 699 (7th Cir. 2004). The court reviews the entire record but does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel,* 152 F.3d 636, 638 (7th Cir. 1998).

The previous appeal dealt primarily with the ALJ's consideration of Varga's treating physician opinions and the Veterans Administration's disability finding. I agreed with Varga that the ALJ had not adequately considered these opinions and remanded the case for that purpose. On remand, the newly assigned ALJ addressed these opinions at length and explained why he was rejecting them. In this appeal, Varga does not take issue with the ALJ's consideration of the physicians' opinions. Instead, Varga now argues that the ALJ's hypothetical question to the vocational expert (VE) was flawed because it did not accurately account for his finding of her moderate limitations in concentration, persistence, or pace.

At Step 2 of the sequential analysis, the ALJ found that Varga had moderate difficulties with regard to concentration, persistence, or pace. (Tr. 644.) Instead of restating this precise language in his RFC and in the hypothetical question he posed to the VE, the ALJ included a limitation to "simple, routine, and repetitive tasks in a work environment free of fast paced production

2

requirements, involving only simple, work-related decisions with few if any work place changes."
(Tr. 645.) Varga contends that this was error. Citing to *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010), Varga contends that the ALJ was required to include a moderate limitation in concentration, persistence, and pace as an express limitation in his RFC and in his hypothetical to the VE. His failure to do so, Varga contends, requires that the case be remanded. *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003); *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).

The problem with Varga's argument is that the finding on which she relies was not part of the ALJ's RFC determination. It was a preliminary finding required to complete Steps 2 and 3 of the sequential evaluation process the Social Security Administration (SSA) uses in disability cases. At Step 2, the ALJ is required to determine whether the claimant has a medically determinable impairment, or a combination of impairments, that is severe. 20 C.F.R. § 404.1520(c). At Step 3, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). When the impairment under consideration is a mental impairment, the SSA uses a "special technique" to determine whether it is severe and meets a listing. 20 C.F.R. § 404.1520a. To explain why the ALJ's finding that Varga had a moderate limitation with regard to concentration, persistence, or pace is not a determination of her RFC, it is necessary to explain the SSA's special technique.

The special technique requires first an evaluation of the claimant's pertinent symptoms, signs, and laboratory findings to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). If a mental impairment is found, SSA then rates

the degree of functional limitation resulting from it in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3) and (4). The degree of limitation in the first three areas is rated on a five-point scale: none, mild, moderate, marked and extreme. The degree of limitation for episodes of decompensation is rated on a four-point numerical scale: none, one or two, three, four or more. These ratings are then used to determine whether the mental impairment is severe (Step 2) and, if so, whether it meets the criteria of one of the listings for mental impairments (Step 3). If a claimant has had no episodes of decompensation and the first three functional areas are rated none or mild, the agency generally concludes that the claimant does not have a severe mental impairment. 20 C.F.R. § 404.1520a(d)(1). If a claimant's impairment meets or medically equals the criteria for one of the listed impairments, the individual is deemed disabled at Step 3 of the SSA's sequential evaluation process. 20 C.F.R. § 404.1520(d)(2). If, however, a mental impairment is severe, but does not meet or medically equal a listed impairment, then a more particularized assessment is made of the claimant's mental RFC. 20 C.F.R. § 404.1520a(d)(3).

To document the application of the special technique, the SSA has created a form called the Psychiatric Review Technique (PRT) which is to be completed by the State agency medical or psychological consultant at the initial or reconsideration level of the administrative review process. 20 C.F.R. § 404.1520a(e)(1). At a hearing on the claim, the ALJ is required to incorporate the pertinent findings and conclusions on the PRT into his or her written decision. 20 C.F.R. § 404.1520a(e)(4). A second form, the Mental Residual Functional Capacity Assessment (MRFCA), is used to document the more detailed evaluation that is required when the claimant's impairment, though severe, does not meet or exceed the criteria of a listing and a mental RFC must

4

be determined. The use of these forms is explained in the SSA's Program Operations Manual System (POMS), which is available at https://secure.ssa.gov/apps10/poms.nsf. *See* POMS, DI 24505.025 and DI 24510.060.

In this case, Dr. Roger Rattan, a State agency consultant, completed the PRT form to evaluate Varga's mental impairments based on his review of Varga's file. (Tr. 201-14.) Dr. Rattan checked a box to indicate Varga had moderate limitations in two of the broad areas of functioning: (1) activities of daily living; and (2) maintaining concentration, persistence or pace. Dr. Rattan checked boxes showing only mild limitations in maintaining social functioning and none for episodes of decomposition. (Tr. 211.) Because Dr. Rattan found moderate limitations in two of the broad functional areas, Varga's mental impairment was deemed severe. But it was not so severe as to meet or medically equal a listing. To determine whether Varga's mental impairment met or medically equaled a listing, Dr. Rattan considered the listings for affective disorders (Listing 12.04) and anxiety-related disorders (Listing 12.06). To satisfy the paragraph B criteria of either listing, the claimant must have at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decomposition. 20 C.F.R. Part 404, Subpart P, App. 1, 12.04 and 12.06. Because Varga's mental disorder did not meet the paragraph B criteria of either listing, Dr. Rattan indicated on the PRT that an RFC assessment was necessary. (Tr. 201.)

The regulations require that ALJ's also apply the special technique to evaluate mental impairments. As the regulations require, the ALJ in this case incorporated into his written decision "the pertinent findings and conclusions based on the technique." 20 C.F.R. § 404.1520a(e)(4). The ALJ included in his decision "a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." *Id.* Based on his own review of the

record, the ALJ found that Varga had only a mild restriction in activities of daily living. However, he agreed with Dr. Rattan and found that she had moderate difficulties in "maintaining concentration, persistence, or pace." (Tr. 644.) What is key, however, is that this was not a finding as to Varga's mental RFC. As the ALJ explained, "[t]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not a residual functional capacity assessment but are used to rate the severity of impairments at steps 2 and 3 of the sequential evaluation process." (Tr. 645.) The ALJ explained: "The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p)." (*Id.*) In so stating, the ALJ was explicitly following, indeed, quoting the applicable regulation and ruling. *See* 20 C.F.R. § 404.1520a(d); *see also* SSR 96–8p, 1996 WL 374184, *4 (1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.").

That the ALJ's findings with respect to the "paragraph B" criteria of a Listing are not intended as the claimant's RFC is also apparent from the significant differences between the PRT and the MRFCA forms. In the PRT form, the functional areas to be considered are described in broad and disjunctive terms. Here, for example, the State consultant checked the box indicating

6

Varga had a moderate degree of limitation in "maintaining concentration, persistence, or pace." (Tr. 211.) Because three different functions are listed in the disjunctive, however, a check in the moderate box does not indicate whether the limitation applies to one, two, or all three functions. The worksheet section of the MRFCA form, in contrast, breaks the three broad areas of mental function listed on the PRT into twenty functions grouped into four categories. (Tr. 215-16.) As the ALJ explained in his decision, the mental residual functional capacity assessment requires a more detailed assessment than the preliminary assessment used at steps 2 and 3 to determine whether the impairment is severe and meets a listing. (Tr. 645.)

From the foregoing, it follows that the ALJ did not err in failing to include either in his RFC or in the hypothetical question he posed to the VE a moderate limitation to maintain concentration, persistence, or pace. The SSA's rulings and regulations make clear that the preliminary findings as to the broadly defined areas of function required at Steps 2 and 3 of the sequential evaluation process are not intended as an RFC assessment. The broad categories of function considered at those steps do not lend themselves to the detailed assessment needed to determine a claimant's mental RFC so that the remaining steps in the sequential process can be completed. It is for this reason that the MRFCA is used when a severe mental impairment is shown to exist that does not meet a listing. It is not error for the ALJ to comply with the SSA's special technique for evaluating alleged mental impairments. To the contrary, it would be error not to follow the SSA's regulations and rulings. 20 C.F.R. § 402.35(b)(1); *see also Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991).

The same is true of boxes checked in the Summary Conclusions section of the MRFCA form. Here, Dr. Rattan also completed the MRFCA form. (Tr. 215-18.) It is in the MRFCA that

7

the medical consultant is to record the claimant's mental RFC. The first section of the MRFCA is entitled "Summary Conclusions." There the form lists twenty mental health functions grouped under four main categories: understanding and memory; sustained concentration and persistence; social interaction; and adaptation. To the right of each of the mental health functions is a series of decision check-blocks that appear under the following headings: not significantly limited; moderately limited; markedly limited; no evidence of limitation in this category; and not ratable on available evidence. At the end of the form is a space under the heading "Functional Capacity Assessment" where the actual mental RFC is to be recorded in narrative form. (R. 217.) POMS DI 24510.060.

In completing the MRFCA in this case, Dr. Rattan checked a number of boxes in the Summary Conclusion portion of the form indicating Varga had moderate limitations. (Tr. 215-16.) Although Varga does not challenge this aspect of the ALJ's decision, it is worth noting for completeness that the boxes checked in the Summary Conclusions section of the MRFCA form are not intended as mental RFC findings any more than those checked on the PRT form. The instructions state that "[t]he degree and extent of the capacity or limitation must be described in narrative format in Section III." POMS, DI 24510.063. According to the POMS, "**Section I** [the Summary Conclusions section] **is merely a worksheet** to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment**." POMS, DI 24510.060 (emphasis in original); *see also Smith v. Comm'r of Social Sec.*, 631 F.3d 632, 637 (3d Cir. 2010) ("Because Smith cannot rely on the worksheet component of the Mental Residual Functional Capacity Assessment to contend that the hypothetical question was deficient, his argument is without merit as it pertains to Dr. Tan and Dr. Graff.").

8

The reason the worksheet is not considered an RFC assessment becomes clear when one considers the boxes to be checked as to each function and the instructions for completing the form. Unlike the PRT form, the MRFCA form does not have a box for mild limitations. In completing the worksheet section of the form, the medical consultant is instructed to check box one indicating that the claimant is "'Not Significantly Limited,' when the effects of the mental disorder do not prevent the individual from consistently and usefully performing the activity." POMS, DI 24510.063. Box two, indicating the claimant is "Moderately Limited," is to be checked "when the evidence supports the conclusion that the individual's capacity to perform the activity is impaired." *Id.* In other words, a "moderate" limitation on the MRFCA means only that there is some limitation in the claimant's capacity to consistently and usefully perform the activity, no matter how small. The evaluator is then to describe in narrative form "the degree and extent of the capacity or limitation" in Section III of the MRFCA form. POMS, DI 24510.063.

In this case, it appears that Dr. Rattan failed to properly complete the form. Section III of the MRFCA form he completed simply states "see EWS." (Tr. 217.) As is unfortunately too common in Social Security disability cases, acronyms are used without any indication of what they mean. Presumably, "EWS" refers to electronic work sheet, but no electronic work sheet appears in the almost 1700-page administrative record provided to the Court, much of which consists of duplicate records from the Veterans Administration. In response to the Court's request that the Commissioner supplement the record with the electronic worksheet and advise the Court whether it was part of the record before the ALJ, the worksheet has now been filed, but the Court has been advised that it was not part of the record before the ALJ. Accordingly, it may not be considered by the Court now.

9

The failure on the part of the Commissioner and its counsel to provide a clear and/or complete, and non-duplicative record, however, though frustrating in itself, does not bear on the single issue Varga has raised in this, her second appeal. Varga's claim is that the ALJ failed to include in his RFC and in the hypothetical question he posed to the VE the limitations he found that she had in the area of concentration, persistence, or pace. As explained above, however, the ALJ's preliminary findings were for the purpose of completing Steps 2 and 3 of the sequential analysis and do not constitute findings as to the claimant's RFC. Here, the ALJ accommodated the limitations he found resulting from Varga's mental impairment by limiting her RFC to "simple, routine, and repetitive tasks in a work environment free of fast paced production requirements, involving only simple, work-related decisions with few if any work place changes." (Tr. 645.) This RFC, like the hypothetical question he posed to the VE, is consistent with his findings. Indeed, it constitutes his finding of Varga's RFC. His decision must therefore be affirmed.

### III. CONCLUSION

For the reasons given above, the ALJ did not err in that he was not required to specifically include limitations of concentration, persistence or pace in his hypothetical question to the vocational expert. Accordingly, the decision of the Commissioner is **AFFIRMED**. Plaintiff's motion for summary judgment is **DENIED**.

**SO ORDERED** this   19th   day of March, 2014.

     s/ William C. Griesbach
     William C. Griesbach, Chief Judge
     United States District Court